Law Office of G. Anthony Long
P. O. Box 504970
Second Floor Lim's Bldg.
San Jose, Saipan, MP 96950
Tel. No. (670) 235-4802
Fax. No. (670) 235-4801

FILED
Clerk
District Court

FEB 2 3 2006

For The Northern Mariana Islands
By_____
            (Deputy Clerk)

Attorney for Defendant Ana Demapan-Castro

# IN THE UNITED STATES DISTRICT COURT
## FOR THE
## NORTHERN MARIANA ISLANDS

HENRY S. HOFSCHNEIDER )   **CIVIL ACTION NO. 04-0022**
                                        )
                Plaintiff            )
                                        )
                v.                    )   **DECLARATION OF COUNSEL**
                                        )
ANA DEMAPAN-CASTRO    )
                                        )
                Defendant.        ) Date: March 30, 2005
                                        )
_____ ) Time: 9:00 a.m.

I, G. Anthony Long, hereby declare as follows:

1.    I am the attorney for Ana Demapan-Castro in this case.

2.    I represented Ana Demapan-Castro and the former MPLA Board of Directors in a civil suit filed in the Commonwealth Superior Court filed by plaintiff Henry S. Hofschneider arising from his termination from the now defunct position of MPLA Commissioner.

3.    I possess personal knowledge of the matters set forth herein.

3.    Attached hereto as Exhibit 1 is a copy of the complaint filed by Hosfchneider in the Superior Court.

4.    Attached to the Complaint as Exhibit A is a copy of Hofschneider's employment contract

1   signed by Hofschneider.

2   5.      Attached to the employment contract is a copy of Hofschneider's job description for the

3   position of MPLA Commissioner signed by Hofschneider.

4

5        I declare under penalty of perjury pursuant to the laws of the United States of America

6   that the above is true and correct and execute this declaration on Saipan, CNMI on this 23rd day

7   of February, 2006.

8

9

10                              Law Office of G. Anthony Long

11

12                              By: _____

13                                   G. Anthony Long

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**LAW OFFICE OF G. ANTHONY LONG**
P.O. Box 504970, 2nd Floor Lim's Building
San Jose, Saipan, MP 96950
Tel No: (670) 235-4802  Fax No: (670) 235-4801

# EXHIBIT 1

CLERK OF COURT
SUPERIOR COURT
FILED

2004 NOV -9 PM 3: 57

BY
DEPUTY CLERK OF COURT

SEAN E. FRINK
The Law Offices of Sean E. Frink
Second Floor, Macaranas Building, Garapan,
PMB 161, Box 10003
Saipan, MP 96950
Telephone: (670)233-2889
Facsimile: (670)234-3230
Sean.Frink@Saipan.Com

Attorney for Plaintiff Henry S. Hofschneider

## IN THE SUPERIOR COURT
## FOR THE
## COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

HENRY S. HOFSCHNEIDER,          )    Civil Action No. 04- **0523E**
                                )
        **Plaintiff,**           )
                                )
                                )
        -v-                     )    **COMPLAINT FOR JUDICIAL REVIEW**
                                )    **OF TWO ADMINISTRATIVE**
ANA DEMAPAN-CASTRO, and         )    **DECISIONS AND THE FILING OF**
MARIANAS PUBLIC LANDS           )    **ADDITIONAL CAUSES OF ACTION**
AUTHORITY BOARD                 )
OF DIRECTORS,                   )
                                )
        **Defendants,**          )
_____ )

## I.
## THE PARTIES

1.    Plaintiff Henry S. Hofschneider (hereinafter "Commissioner Hofschneider") is

an individual employed as the Commissioner of the Marianas Public Lands Authority, residing

on the island of Saipan, Commonwealth of the Northern Mariana Islands, a CNMI taxpayer, a

person of NMI descent, and a citizen of the United States.

2.    Defendant Ana Demapan-Castro, (hereinafter "Demapan-Castro" or

"Defendant") is a resident of Saipan, a United States Citizen, and the Chairwoman of the Board

of Directors of the Marianas Public Lands Authority, a public corporation established and


(On #0146737)

H.S.H. Initial Complaint — Pg. 1

existing under CNMI Public Law 12-33, as amended by PL 12-71.  Defendant is sued in her

both her professional and personal capacities.

3.    Defendant Marianas Public Lands Authority Board of Directors (hereinafter the

"Board") is a five-member board of directors of a public corporation and CNMI government

instrumentality established and existing under CNMI Public Law 12-33, as amended by PL 12-

71, that may be sued in its own name.  The Board is named as a defendant to the extent that the

Court determines that the acts of Demapan-Castro described below were somehow biding acts

of the Board and for purposes of enjoining further expenditure of MPLA and Board money

related to Demapan-Castro's personal acts against Commissioner Hofschneider.

## II.
## JURISDICTION

4.    This Court has jurisdiction to hear and decide this matter pursuant to Article IV,

Section 2 of the Constitution of the Commonwealth of the Northern Mariana Islands, 1 CMC §

3202, and 28 U.S.C. § 1367(d).

5.    This Court has jurisdiction to review the purported administrative decisions of

Demapan-Castro under 1 CMC § 9112(b), the Open Government Meetings and Records Act

related items pursuant to 1 CMC §§ 9915 and 9916, and the Taxpayer Action pursuant to

Article X, Section 9 of the CNMI Constitution.

## III
## RELATED N.M.I. FEDERAL COURT CASE

6.    Commissioner Hofschneider has filed a 42 U.S.C. §1983 case against Demapan-

Castro in her personal capacity in the United States District Court for the Northern Mariana

Islands based upon related facts because of her repeated violation of Commissioner

Hofschneider's due process rights and her related acts of retaliation.   That case is *Henry S.*
*Hofschneider v. Ana Demapan-Castro,* D.N.M.I. Civil Action No. 04-0022.

### IV.
### FACTS

**The Employment Contract**

7.      Commissioner Hofschneider was hired as the Commissioner of MPLA for a four-
year period beginning May 5, 2003 pursuant to the terms and conditions of the contract
attached hereto as Exhibit "A" and made a part of the Complaint as if fully set forth herein
The parties to Commissioner Hofschneider's employment contract were the Board and
Commissioner Hofschneider, provided Commissioner Hofschneider a minimum annual salary
of $80,000.00, and among other provisions, provided:

a.      That the Board could terminate Commissioner Hofschneider's employment
without cause upon 60 days advance written notice of termination but in such event the Board
would be required to immediately pay Commissioner Hofschneider a lump sum payment for
the salary and benefits he would lose during the remainder of his contract period or twelve
months, whichever period is longer;

b.      That the Board could terminate Commissioner Hofschneider's employment
for cause upon 30 days advance written notice if: 1) Commissioner Hofschneider committed a
felony, fraud, or embezzlement, 2) if Commissioner Hofschneider became so disabled as to be
unable to substantially perform his duties, or 3) if Employee material breached his obligations
as set forth in the employment contract and the breach was not corrected within 45 days of
Commissioner Hofschneider reviewing written notice of the breach;

c. That termination for cause shall be effective only after written notice of the cause is provided to Commissioner Hofschneider and he fails to cure or correct the cause within 45 days;

d. Commissioner Hofschneider shall be paid the compensation provided in the contract plus all benefits through the effective date of termination and during any appeal proceedings up to a maximum of 60 days;

e. No basis for Commissioner Hofschneider to be placed on involuntary leave without pay for any period of time; and

f. No basis for Demapan-Castro to take action by herself without prior formal Board approval

8. Demapan-Castro executed the contract on behalf of the Board.

**Commissioner Hofschneider is Suspended With Pay for Fifteen Days**

9. On July 9, 2004, Demapan-Castro issued a "Notice of Suspension" to Commissioner Hofschneider. The alleged basis of the suspension was for insubordination in that Commissioner Hofschneider had allegedly caused document requisition No. FY 04-03 to be altered without the Board's consent and that Commissioner Hofschneider allegedly departed the July 2, 2004 MPLA Board meeting without permission. The July 9, 2004 suspension notice made clear that the suspension was for fifteen working days and Commissioner Hofschneider was to receive his full salary and benefits during the period of suspension.

**Other MPLA Board Members Inform Demapan-Castro That She Is Acting Illegally**

10. On July 9, 2004, Board Vice Chair Manuel P. Villagomez ("Villagomez") wrote Demapan-Castro to inform her that:

a.   She was not empowered nor authorized to act on behalf of the entire then four member Board to suspend Commissioner Hofschneider absent a formal Board vote to do so;

b.   That her factual account was wrong in that Commissioner Hofschneider was fully authorized to reduce the drawdown request and, in fact, was acting prudently and in the best interests of the MPLA in doing so; and

c.   The Board meeting that she alleged Commissioner Hofschneider departed without permission was not a Board meeting and Commissioner Hofschneider asked and was authorized by Board members Villagomez and Nicolas M. Nekai ("Nekai") to leave the meeting before he did so.

11.   On July 12, 2004 Board member Nekai wrote Demapan-Castro to explain that:

a.   She was not authorized by the other Board members to suspend Commissioner Hofschneider;

b.   That the actions alleged in her July 9, 2004 suspension do not rise to the level warranting suspension;

c.   That Commissioner Hofschneider was authorized by Board members Nekai and Villagomez to leave the meeting; and

d.   That Commissioner Hofschneider's adjustment to requisition No FY 04-03 was merely made because the Commonwealth Development Authority ("CDA") required it in order for CDA and MPLA to remain in compliance with the bond indenture agreement and was far from an illegal or improper act.

**Others Explain To Demapan-Castro Why She Is Wrong and the AGO Gets Involved But She Refuses To Reconsider**

12.　　On July 13, 2004, CDA Chairman Sixto Igisomar wrote Nekai to explain that the adjustment made to requisition No. FY 04-03 was required by NMI Public Law 13-56 and the bond indenture agreement.  Thus, CDA agreed that Commissioner Hofschneider acted properly in taking the action that Demapan-Castro had suspended him for.

13.　　On July 13, 2004, Commissioner Hofschneider wrote CNMI Attorney General Pam Brown to ask her office to look into the issues that Demapan-Castro had raised in her July 9, 2004 suspension notice concerning requisition FY 04-03.

14.　　On July 13, 2004, Villagomez and Nekai wrote Commissioner Hofschneider to inform him that the Board was endeavoring to solve its internal differences concerning Demapan-Castro's "independent adverse decision" and that he was to continue reporting to work and carrying out his responsibilities in managing the MPLA.  Demapan-Castro and the other Board member, Mrs. Benita Manglona were provided a copy of the letter.

15.　　On July 14, 2004, Commissioner Hofschneider wrote Demapan-Castro to explain to her why her understanding of the facts surrounding the situation were incorrect and why he did not violate any laws, regulations, agreements, or directives.

16.　　On July 15, 2004, Demapan-Castro again wrote Commissioner Hofschneider to inform him that he was not to return to the office, reiterating that he was suspended with pay until July 29, 2004, and indicating that any further violations of her directive would result in his suspension being changed to one without pay.

17.　　On July 19, 2004, Villagomez wrote Demapan-Castro and the other members of the Board to propose that they meet with the Commissioner in an attempt to reconcile their disagreements.

18.    On the same day, July 19, 2004, Demapan-Castro wrote the CNMI Attorney General and the Secretary of Finance asking that they "promptly" review the situation regarding requisition FY 04-03.

19.    Demapan-Castro evidently had already made up her mind to carry out her will, regardless of the facts and people that clearly indicated that she was wrong, what the other Board members thought, and regardless of the Commissioner's rights, because she hand wrote on Villagomez's July 19, 2004 letter "over my dead body."

**Demapan-Castro Explains That She Believes That She Is The Board and Can Act Unilaterally and Without Their Approval**

20.    On the same day, July 19, 2004, Demapan-Castro wrote Villagomez back to claim that she believed that she had been delegated ". . . full and complete authority to exercise the administrative powers granted to the Board pursuant to P.L. 12-33 as amended" by means of an "October 30, 2003" (sic) memorandum that was allegedly ratified at the "August 14, 2004" (sic) Special Board Meeting and, thus, could do whatever she wanted, with or without the consent of the rest of the Board and without having to conduct a meeting.

21.    Of course, Demapan-Castro's theory ignores the clear requirements of the CNMI's Open Government Meetings and Records Act (CNMI Public Laws 8-41, 9-2, and 10-82) (hereinafter referred to as the "OGA") and Section 103 (e) of CNMI Public Law 12-33, as amended by CNMI PL 12-71, which states: "the Board shall act only by the affirmative vote of the majority of the five [MPLA Board Members]."

22.    The "October 30, 2003" memorandum referred to by Demapan-Castro in her July 19, 2004 correspondence to Villagomez was actually dated July 30, 2003 and the "August 14, 2004" Special Board Meeting referred to by Demapan-Castro was actually an August 14, 2003 Special Board Meeting.

23.     In addition, Demapan-Castro's theory ignores the fact that the manner in which the purported delegation was allegedly executed and adopted violated the OGA as well in the following manners:

a.  The July 30, 2003 correspondence was not executed in a public meeting;

b.  The agenda and notice and posting and delivery of the agenda and notice for the August 14, 2003 Special Meeting was fatally defective;

c.  The alleged ratification of the July 30, 2003 correspondence was merely the ratification of an illegal act performed in violation of the OGA and ratifications in such circumstances are considered void; and

d.  The Minutes from the August 14, 2003 Special Meeting make clear that the Board did not provide the Demapan-Castro with the power that she purports to have been provided.

24.     "Any action taken at meetings failing to comply with the provisions of [the OGA] shall be null and void." 1 CMC § 9907.

25.     In addition, on July 22, 2004, Board member Villagomez wrote Demapan-Castro notifying her that, effective immediately, he was withdrawing his delegation of authority to her over administrative matters.

**Demapan-Castro Retaliates By Suspending Commissioner Hofschneider Without Pay Pending the Outcome of an AGO/Finance Review**

26.     On July 28, 2004, Demapan-Castro wrote Commissioner Hofschneider to inform him that she had written the CNMI Attorney General's Office and the Secretary of Finance on July 19, 2004 to request them to review and provide an opinion concerning requisition Request FY 04-03 and that she had not yet received their response to her inquiry.  Demapan-Castro informed Commissioner Hofschneider that as a result, effective July 30, 2004, she was

placing him on leave without pay until an "official opinion is received from both agencies."

She further notified Commissioner Hofschneider that the suspension was continuing for the

same reasons stated in her July 9, 2004 suspension memorandum and that he could appeal her

decision pursuant to the Commonwealth Administrative Procedure Act. A copy of Demapan-

Castro's July 28, 2004 Notice of Continuing Suspension is attached hereto as Exhibit "B."

27.    The contract provides no basis to suspend Commissioner Hofschneider without

pay and Demapan-Castro did not provide Commissioner Hofschneider with an opportunity to

cure or correct before placing him on indefinite suspension without pay.

**Demapan-Castro Refuses to Cooperate With The AGO/Finance Review That She Requested and That She Says Commissioner Hofschneider Must Wait For The Results From before Returning to Work**

28.    On August 3, 2004, Attorney General Pam Brown wrote Demapan-Castro to

inform her that the Secretary of Finance had agreed to look into the situation and to request

that she "identify the specific procedures you believe to have been violated, including the

specific laws and/or governing instruments which support [her allegations of impropriety]."

29.    Despite the fact that Demapan-Castro's July 19, 2004 request to the Attorney

General and Secretary of Finance requested that they conduct their review "promptly,"

Demapan-Castro in the more than three months since she was requested by the AG, has failed

to respond in any manner to the Attorney General's August 3, 2004 request that she identify

exactly what she is alleging Commissioner Hofschneider did wrong.

30.    Meanwhile, Demapan-Castro's unilateral suspension of Commissioner

Hofschneider from employment without pay continued indefinitely from July 28, 2004

pending the outcome of the AGO/Finance review.

**Demapan-Castro Reneges on Her Settlement Agreement**

31.    On August 26, 2004, Demapan-Castro and Commissioner Hofschneider met in order to determine whether they could settle the matter upon mutually agreed upon terms. They reached an agreement on all terms, whereby Commissioner Hofschneider would return to work immediately and receive his back pay, subject only to meeting the next morning to review and sign the letter documenting the terms that Commissioner Hofschneider would prepare that evening.

32.    On the morning of August 27, 2004, Commissioner Hofschneider and Demapan-Castro met to review and sign the letter prepared by Commissioner Hofschneider.  Demapan-Castro agreed that the letter accurately reflected the full and complete agreement they reached the previous evening but now refused to sign it unless Commissioner Hofschneider signed two documents that Demapan-Castro had obviously had her attorney prepare whereby Commissioner Hofschneider would admit to wrongdoing (directly contrary to the agreement that had been reached the night before) and a broad pledge of confidentiality on almost all MPLA related matters.

**The Federal Lawsuit is Filed, The APA Suspension Cause of Action is Dismissed and Transferred to This Complaint, and Commissioner Hofschneider Requests Release of His Annual Leave**

33.    On that same day, August 27, 2004, within 30 days of the delivery of the July 28, 2004, indefinite suspension without pay notice to Commissioner Hofschneider, the original Complaint in the Federal lawsuit described in paragraph 6. of this Complaint was filed.

34.    Besides the § 1983 Civil Rights and other causes of action, it included a timely appeal of Demapan-Castro's Suspension of Commissioner Hofschneider without pay pursuant to the CNMI's Administrative Procedures Act.

35.    Such APA appeal was voluntarily dismissed without prejudice earlier in the day on November 8, 2004, the same day as the filing of this Complaint.

36.    On September 9, 2004, Commissioner Hofschneider wrote MPLA to request immediate release of payment for all but 40 hours of his accrued annual leave (237 hours) pursuant to Section 4.a.4 of his Contract.

**Three of The Five Board Members Order Commissioner Hofschneider Back to Work But Demapan-Castro and Her Attorneys Refuse To Allow Him Back**

37.    On or about September 17, 2004, Villagomez, Nekai, and newly confirmed Board member Felix A. Sasamoto ("Sasamoto") wrote Demapan-Castro and Commissioner Hofschneider to inform him that they believed that Demapan-Castro's actions related to Commissioner Hofschneider's employment were made without authority, factually unsupportable, and void. The letter directed Commissioner Hofschneider to return to work immediately and for MPLA Accounting Division to issue a check for back pay.  Exhibit "C."

38.    On September 20, 2004, MPLA attorney Alan Lane wrote to Villagomez, Nekai, and Sasamoto to inform them that Commissioner Hofschneider could not return to work absent a formal Board meeting and vote.  Of course, Mr. Lane failed to recognize that this was precisely one of the points that the three Board members had made in their letter; Board members, particularly Board members acting alone, cannot act on behalf of the Board absent a proper vote at a properly noticed Board meeting.

39.    On September 20 and 21, 2004, Commissioner Hofschneider returned to work as directed by the three board members.

40.    On the same day, September 21, 2004, Defendant caused one of her attorneys, Mark A. Smith, to write Commissioner Hofschneider's attorney to inform him that

Commissioner Hofschneider was trespassing by entering the MPLA premises and that they would "seek legal remedies" if he returned.

**The Tables Are Turned: AGO and Finance Are Tired of Demapan-Castro's Refusal to Cooperate, Demapan-Castro Surreptitiously Receives A Copy of the Draft AGO/Finance Report Which Exonerates Commissioner Hofschneider, and She learns That OPA is Now Apparently Investigating Her Illegal Actions**

41.    On September 28, 2004, CNMI Assistant Attorney General Ben Sachs wrote Demapan-Castro's attorney to remind her that AGO was requesting her to identify precisely what wrongdoing she was accusing Commissioner Hofschneider of. The letter also explained that although the AGO had requested such information from her more than six weeks before and she had previously requested an expedited review of the situation, AGO had yet to receive her response.

42.    Upon information and belief, on or about September 29, 2004, more than one of Demapan-Castro's attorneys (Demapan-Castro has at least four attorneys representing her interests in this matter) met with representatives of the CNMI Office of the Public Auditor ("OPA"). OPA was conducting a review of the situation in order to determine whether any CNMI Laws or MPLA Regulations had been violated pursuant to a request of the Attorney General's Office. At that meeting, the attorneys were informed that Demapan-Castro's conduct related to Commissioner Hofschneider's employment was being investigated by OPA. Serious concerns related to Demapan-Castro's conduct were raised at the meeting by OPA. News of this investigation was upsetting to Demapan-Castro because she apparently believed that only Commissioner Hofschneider's actions were being reviewed by the AGO and Department of Finance..

43.     On or about October 6, 2004, Demapan-Castro surreptitiously received a copy of the Department of Finance's draft report. Such report effectively exonerated Commissioner Hofschneider of misconduct by indicating that his actions were reasonable and lawful related to the drawdown.

44.     Although Demapan-Castro was provided a copy of the October 6, 2004 report, apparently by someone within the Department of Finance, neither Commissioner Hofschneider nor the other members of the Board, were provided a copy by Finance or Demapan-Castro. Apparently, she does not want them to know about it because it proves what Commissioner Hofschneider and the other members of the Board have been saying all along, she is wrong and Commissioner Hofschneider was not deserving of any discipline whatsoever.

**Commissioner Hofschneider Writes Demapan-Castro To Indicate That Her One-Month Delay In Releasing His Annual Leave Payment Reeked of Retaliation**

45.     On October 7, 2004, Commissioner Hofschneider's counsel wrote Demapan-Castro's counsel regarding Demapan-Castro's lack of response to Commissioner Hofschneider's September 9, 2004 request for payment for 237 hours of annual leave. The letter made clear that if the payment was clearly warranted under the contract and that if it was not received by October 15, 2004, that Commissioner Hofschneider would file an additional count in the Federal lawsuit for retaliation. To date, MPLA has not paid Commissioner Hofschneider for any of his annual leave.

**Demapan-Castro's Final Desperate Act?  She Terminates Commissioner Hofschneider**

46.     On October 11, 2004, Demapan-Castro caused to be delivered to Commissioner Hofschneider a "Notice of Termination" dated October 8, 2004. A copy is attached hereto as Exhibit "D."

47.     The Notice of Termination is signed by Demapan-Castro, is purportedly made pursuant to the powers vested in Demapan-Castro by law and by the delegation of the Board, and purports to terminate Commissioner Hofschneider's employment, effective immediately.

48.     The Notice of Termination provided five alleged bases for the termination.

49.     The Notice of Termination failed to provide Commissioner Hofschneider the contractually mandated 45-day opportunity to cure the alleged deficiencies.

50.     Demapan-Castro and her agents took actions that effectively precluded Commissioner Hofschneider from exercising his right to cure or correct.

51.     The Notice of Termination failed to provide a pre-termination hearing.

52.     The Notice of Termination failed to provide the degree of specificity required for due process to have been provided to Commissioner Hofschneider.

53.     The Notice of Termination purports to discipline Commissioner Hofschneider for events for which he has already been fully disciplined for.

54.     The Notice of Termination fails to comply with commitments made by the Demapan-Castro in her July 28, 2004 suspension notice to abide by the conclusions reached in the AGO/Finance review.

**V.**
**CAUSES OF ACTION**

**COUNT I: Administrative Appeal of Suspension Without Pay and Termination Decisions**

55.     Commissioner Hofschneider incorporates herein by reference as if set forth in full paragraphs 1 through 54.

56.     Commissioner Hofschneider is adversely affected and aggrieved, as provided by 1 CMC § 9112(b), by Demapan-Castro's decisions to suspend him without pay and to terminate his employment.

57.    Not more than thirty days had elapsed from the date of the issuance of the suspension without pay letter until Commissioner Hofschneider appealed the suspension without pay decision to the Federal Court and not more than thirty days have passed since that appeal was dismissed and re-filed in this Complaint pursuant to 28 U.S.C. §1367(d).

58.    Not more than 30 days have elapsed since the issuance of the termination letter.

59.    Commissioner Hofschneider is bringing this matter to this Court as an administrative appeal from Demapan-Castro's decisions.  First and foremost, Commissioner Hofschneider reiterates his position that Demapan-Castro lacked the authority to order his suspension without pay and termination.  Thus, those acts are void.  (See Counts II and III below).  Although Section 10.b. of Commissioner Hofschneider's contract appears to *allow* him to appeal Demapan-Castro's decision, it in no way *mandates* such an appeal.  Therefore, the exhaustion doctrine is not applicable and direct appeal to this Court is allowed.

60.    In addition, exhaustion is not required because Demapan Castro lacked the authority to suspend or terminate Commissioner Hofschneider in the first place and it would be futile for Commissioner Hofschneider to appeal because Demapan-Castro has repeatedly demonstrated her bad faith towards Commissioner Hofschneider's rights throughout the process and would only use an appeal to delay or compromise an objective review of the facts and related law.

61.    Commissioner Hofschneider requests, in part, that the Court hold the suspension and termination decisions issued by Demapan-Castro were arbitrary, capricious, an abuse of discretion, not in accordance with law, in excess of statutory authority, or limitations, and short of statutory rights, and unwarranted by the facts as provided in 1 CMC § 9112(f)(2).

62.    Therefore, Commissioner Hofschneider prays for relief as set forth below in Section VI.

**COUNT II:    Open Government Meetings and Records Act Violations**

63.    Commissioner Hofschneider incorporates herein by reference as if set forth in full paragraphs 1 through 54.

64.    Demapan-Castro's purported suspension without pay and termination of Commissioner Hofschneider did not comply with the OGA in that:

      a.    They were actions only the Board could take;

      b.    They were made privately by Demapan-Castro and were not made in a Board meeting properly noticed and open to the public;

      c.    Were made without a Board vote at such a meeting.

65.    To the extent that Demapan-Castro relies upon the purported July 30, 2003 delegation of Board power, that delegation and the subsequent attempt to ratify it were in violation of the OGA in the following manners:

      a.    The intent of the delegation was in direct violation of the intent of the OGA;

      b.    Only the Board possesses the power purported to be given the Demapan-Castro in the purported delegation;

      c.    The July 30, 2003 correspondence was not executed in a public meeting;

      d.    The agenda and notice and posting and delivery of the agenda and notice for the August 14, 2003 Special Meeting was defective in that it was not posted and delivered to Board members in the manner required by law and did not include the July 30, 2003 correspondence on the agenda or the call of business to be conducted;

e. The alleged ratification of the July 30, 2003 was merely the ratification of an illegal act performed in violation of the OGA and ratifications in such circumstances are considered void at law; and

f. The Minutes from the August 14, 2003 Special Meeting make clear that the Board did not ratify and provide Demapan-Castro with the power that she purports to have been provided.

66. "Any action taken at meetings failing to comply with the provisions of [the OGA] shall be null and void." 1 CMC § 9907.

67. Therefore, Commissioner Hofschneider prays for relief as set forth below in Section VI.

**COUNT III: Violation of CNMI Public Law 12-33**

68. Commissioner Hofschneider incorporates herein by reference as if set forth in full paragraphs 1 through 54.

69. The parties to Commissioner Hofschneider's employment contact are the Board and Commissioner Hofschneider.

70. Section 103 of CNMI Public Law 12-33, as amended by CNMI Public Law 12-71, explains the set up of the Board and its powers.

71. The Board is to include a representative from each of the islands of Tinian and Rota and three representatives from Saipan

72. At least one member shall be a woman and one of Carolinian descent.

73. Importantly, "The Board shall act only by the affirmative vote of the majority of the five directors." (PL 12-33, §103(e)).

74. Demapan-Castro's suspension without pay and termination of Commissioner Hofschneider failed to comply with the clear requirements of Section 103.

75. In addition, to the extent that she relies upon the purported July 30, 2003 delegation and purported August 14, 2003 ratification of such purported delegation, such delegation and ratification violate the language and intent of Section 103 as well.

76. Therefore, Commissioner Hofschneider prays for relief as set forth below in Section VI.

**COUNT IV: Breach of Contract**

77. Commissioner Hofschneider incorporates herein by reference as if set forth in full paragraphs 1 through 54.

78. Demapan-Castro's actions violated the terms and conditions of the contract between Commissioner-Hofschneider and the Board in the following manner:

      a. only the Board, acting as a whole, may take action related to the contract;

      b. the contract contains no basis for suspension without pay;

      c. the purported bases for the termination were not for any of the enumerated reasons listed in Section 10(b) of the contract;

      d. the suspension without pay and termination notices failed to provide 30 days advance written notice;

      e. the suspension without pay and termination notices failed to provide the required 45 days for Commissioner Hofschneider to cure and/or correct the alleged deficiencies;

      f. the termination notice failed to give sufficient detail as to counts 1, 2, 3, and 5 so as to constitute notice as required by the contract;

g.  none of the alleged termination bases set forth in the notice are provisions contained in the employment;

h.  the termination notice failed to cite what provisions of the contract corresponded with the alleged bases for termination;

i.  the termination notice failed to provide the compensation and all benefits due Commissioner Hofschneider through the date of purported termination;

j.  Demapan-Castro has refused to timely pay Commissioner Hofschneider for 237 hours of accrued annual leave as requested by him;

k.  she and her attorneys and agents actively interfered with Commissioner Hofschneider's ability to cure and/or correct by refusing him access to the workplace and certain rooms within the workplace;

l.  failure to investigate the purported bases adequately;

m.  the actions complained of were already fully disciplined;

n.  failure to follow commitment to abide by conclusions of AGO/Finance review;

o.  undermined an important public policy, namely the ability of the entire MPLA board to make a decision;

p.  failure to cooperate with the AGO/Finance review;

q.  actively lobbying bond counsel, CDA, and the bond trustee to indicate their disagreement with Commissioner Hofschneider's actions related to the drawdown request;

r.  refusal to pay Commissioner Hofschneider the salary and benefits to which he is contractually entitled;

H S H  Initial Complaint – Pg. 19

s.    some of the bases alleged in the notice were either ordered by what appeared to be a majority of the members of the Board or agreed to by relevant and authorized board members or MPLA employees; and

t.    the covenant of good faith and fair dealing was repeatedly violated (See Count V. below).

79.    Therefore, Commissioner Hofschneider prays for relief as set forth below in Section VI.

**COUNT V: Violation of Covenant of Good Faith and Fair Dealing**

80.    Commissioner Hofschneider incorporates herein by reference as if set forth in full paragraphs 1 through 54 and 78.

81.    The implied covenant of good faith and fair dealing is contained in every government contract. *Hughes Communications Galaxy, Inc. v. United States*, 26 Cl. Ct. 123, 140 (1992). It has been read into government contracts for over 100 years. *United States v. Smith*, 94 U.S. 214 (1876) (United States is liable for damages resulting from interference with contractor's work).

82.    The RESTATEMENT (SECOND) OF CONTRACTS § 205 implies a promise (or *covenant*) by each party to a contract to deal fairly and in good faith.[1] "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Comment c. states that bad faith may consist of: "abuse of a power to specify terms," and "failure to cooperate in the other party's performance." Comment e. states that this obligation also "extends to the assertion, settlement, and litigation of contract claims and defenses." The

---

[1] In the Commonwealth, the rules of the Restatement apply in the absence of statutory law. *Ito v. Macro Energy, Inc.*, 4 N.M.I. 46 (1993).

"conjuring up a pretended dispute, asserting an interpretation contrary to one's own understanding" and "abuse of a power to determine compliance" are all examples of bad faith.

83.    Demapan-Castro's acts, and the acts of her agents and attorneys that were done at her direction, as set forth above, violated her duty of good faith and fair dealing to Commissioner Hofschneider, owed by her both personally and as a member of the Board.

84.    Therefore, Commissioner Hofschneider prays for relief as set forth below in Section VI.

**COUNT VI: Interference with Contract and Economic Relations**

85.    Commissioner Hofschneider incorporates herein by reference as if set forth in full paragraphs 1 through 54.

86.    Demapan-Castro is a third party to the contract entered into between Commissioner Hofschneider and the Board.

87.    Demapan-Castro, and her attorneys and agents at her direction, in the manners set forth above, intentionally and improperly interfered with the performance of the contract by inducing or otherwise causing the Board not to perform the contract.

88.    Demapan-Castro is, therefore, liable to Commissioner Hofschneider for his damages.

89.    Therefore, Commissioner Hofschneider prays for relief as set forth below in Section VI.

**COUNT VII: Taxpayer Action**

90.    Commissioner Hofschneider incorporates herein by reference as if set forth in full paragraphs 1 through 54.

91.     Demapan-Castro continues to expend public funds, primarily in the form of her legal defense fees and costs, in order to pursue her personal vendetta against Commissioner Hofschneider and to defend her unilateral and illegal actions.

92.     In addition, other expenses are being incurred, such as salaries and benefits for newly hired employees who would not be necessary had Demapan-Castro simply complied with the law.

93.     The Board, through inaction, either intentional or unintentional, has allowed these expenditures to continue, despite the fact that Demapan-Castro actions are illegal and clearly beyond the powers provided her by law.

94.     Such expenditures are expenditures of public funds for other than public purposes and constitute a breach of her fiduciary duty as a member of the Board.

95.     Therefore, Commissioner Hofschneider prays for relief as set forth below in Section VI.

## VI.
### PRAYERS FOR RELIEF

For these reasons, Commissioner Hofschneider asks for judgment against Defendants for the following:

a.     An order determining that Demapan-Castro's suspension without pay and termination of Commissioner Hofschneider were illegal and null and void;

b.     An order directing Demapan-Castro and her attorneys and other agents to cease and desist from taking actions depriving Commissioner Hofschneider of his lawful position as the MPLA Commissioner, and the salary and benefits that spring from that position;

c.     Reversal of Demapan-Castro's decisions to suspend without pay and terminate Commissioner Hofschneider;

d. Commissioner Hofschneider's actual damages;

e. Punitive damages in the amount of $1,750,000.00

f. Prejudgment and post-judgment interest;

g. Costs of suit including attorneys' fees;

h. A reasonable amount relative to the public benefit of this suit; and

i. All other relief that the court deems appropriate.

Dated this 8th day of November 2004.

Respectfully submitted,

SEAN E. FRINK

U.S.H. Initial Complaint – Pg. 23