# Exhibit "A"

CONTRACT # EMP03-02

# MARIANAS PUBLIC LANDS AUTHORITY
## Employment Contract

This Contract for personal services is entered into between the Board of the Marianas Public Lands Authority, its successors and assigns (hereinafter referred to as "Employer"), and **HENRY S. HOFSCHNEIDER** (hereinafter referred to as "Employee").

The Employer requires the services of a **COMMISSIONER**. The requirements of this position are stated in the attached Job Description, which both the Employer and the Employee have read and understand. The Employee hereby states and Employer hereby acknowledges that that Employee possesses the necessary degree of expertise, training, and knowledge to fulfill the obligations specified in the Job Description. The Employee shall be primarily stationed on the island of **SAIPAN**.

The Term of this contract shall be for a period of four (4) years, which shall commence on **MAY 5, 2003** and shall end on **MAY 4, 2007**. During this period, the Employer agrees to pay the Employee an annual base salary of EIGHTY THOUSAND DOLLARS ($80,000.00) in biweekly payments. The employee's base salary shall automatically increase by five percent (5%) annually subject to fund availability.

In addition to the aforementioned terms, both the Employer and the Employee also agree to all the other terms and the conditions specified in this contract, as specified below:

1. **PRE-EMPLOYMENT CONDITIONS STANDARD:**

   a) The Employer requires that the Employee be certified as physically capable of performing the duties of the position. The Employee must be free from communicable diseases and any present or potential medical condition, which would be detrimental to successful performance of duty or the health of other employees, or reflect discredit upon the Employer.

   b) The Employer may require Employee to be examined by medical personnel authorized by the Employer to conduct such examinations for employment purposes and the results shall be recorded on forms provided by Employer. The Employer may waive this requirement upon renewal of the Employee's contract.

2. **COMPENSATION AND WORK SCHEDULE:**

   The Employee shall earn his/her salary on the basis of a twelve-month (12) work year consisting of twenty-six (26) bi-weekly pay periods.

   The Employee's workday and workweek may vary from time to time according to needs of the Employer. Every effort will be made to maintain a reasonable five-day forty-hour workweek. **This position is not covered under the Fair Labor Standards**

Page 1 of 8

Act of 1938 (FLSA) for overtime and compensatory time purposes. Employer shall not be liable for time and services rendered by Employee beyond that standard 40-hour, 5-day-a-week workweek.

3. <u>MANDATORY PARTICIPATION IN NORTHERN MARIANA ISLANDS RETIREMENT FUND</u>:

   The NMI Retirement Fund Act of 1988 requires mandatory participation in the Retirement Fund for all government employees.

   a) Employees who were members of the Retirement Fund before May 7, 1989, are Class II members. These members have the option of transferring to Class I membership anytime. Class II members contribute 9% of their gross wages to the Retirement Fund.

   b) Employees hired on or after May 7, 1989, and employees who opted not to join the Retirement Fund before May 7, 1989, are Class I members. Class I members contribute 6.5% of their gross wages to the Retirement Fund.

      1) Class I members having less than ten (10) years of vesting service credits with the Retirement Fund will be eligible for refund of their contribution, including interest, upon separation from employment.

      2) Class I members are not entitled to a refund after ten (10) years of vesting service.

      3) Class I members having ten (10) or more years of vesting service credits have a vested right to a pension upon attaining age sixty-two (62) or meeting normal retirement eligibility. However, Class I members hired prior to April 16, 1998, have a vested right to a pension after having three (3) or more years of contributing membership service and upon attaining age sixty-two (62), or upon meeting normal retirement eligibility, pursuant to Retirement Board Decision dated October 2, 1998, entitled In the matter of the Appeal of Linn Asper, et al.

4. <u>LEAVE</u>

   a) Annual Leave: Annual leave shall accrue to the Employee at the rate of eight (8) hours per pay period.

      1) The Employee employed in the first year of the contract shall be entitled to use of annual leave only after having been employed for a continuous period of ninety (90) days without a break in service.

      2) Annual leave may be used only upon prior written approval of the Chairperson of the MPLA Board of Directors.

3) The Employee who terminates employment at the completion of the present employment contract, or resigns, will receive on the next regular pay period following separation a lump-sum payment of all unused annual leave computed at the Employee's current hourly rate based on twenty-six biweekly pay periods and 2,080 hours in a work-year. Such payment is in addition to, not in lieu of, any other compensation and benefits due to the Employee at the time of separation.

4) Where an offer and acceptance for a new period of employment is agreed upon under a new employment contract, all accrued and unused annual leave credits from the prior contract may be paid immediately or carried over, at the election of the Employee.

   The Employee, may also elect to be paid his/her accrued annual leave credits at any time during each calendar year within the term of this contract, provided Employee must leave a balance of at least 40 hours of annual leave.

5) Any annual leave accumulated in excess of 360 hours as of the end of a calendar year may be converted to sick leave on the last day of such calendar year. A report showing the accrued annual leave balance shall be provided to the Employee each pay period.

b) Sick Leave: Sick leave shall accrue to the Employee at the rate of four (4) hours per pay period.

   1) The Employee is entitled to use sick leave from the time sick leave is first earned.

   2) Any absence on sick leave where the Employee misses more than three (3) consecutive days of work must have the illness verified by a note from a medical doctor in order for the Employee to claim sick leave.

   3) Upon completion of the present employment contract or termination o employment, whichever occurs first, no payment will be made for accrued an unused sick leave credits.

   4) Where an offer and acceptance for a new period of employment is agree upon under a new employment contract, all accrued and unused sick leav credits from the prior contract will be carried over.

   5) If the Employee's supervisor believes the Employee is misusing sick leave requesting sick leave for purposes other than illness, the supervisor m request proof of illness for periods of less than three days. If the proof is r provided or is unpersuasive, the supervisor may deny the request for si leave.

    6) Sick leave may be accumulated without limit.

c) **Leave Without Pay:** Leave without pay may be taken only after obtaining the written approval of the Employee's immediate supervisor.

d) **Administrative Leave With Pay:** Administrative leave with pay is granted by the Governor in exceptional circumstances such as typhoons and state funerals. Such leave may also be granted by the MPLA Board of Directors or the Commissioner.

e) **Advance Leave:** Where for good reason the Employee requires an advance of annual or sick leave, the Employer may grant leave in advance of up to a maximum of one-half (1/2) of the total earnable leave credits for one (1) year from the date the request is approved or for the remainder of the employment contract, whichever is shorter. Employee granted advance annual leave shall not be allowed to cash out his/her annual leave.

f) **Maternity Leave:** Female employees may be granted maternity leave for absence from work due to confinement for childbirth. Such maternity leave shall not exceed fifteen (15) working days, shall be in addition to accumulated sick leave, and shall be any fifteen (15) days encompassing the date of childbirth. Any additional leave taken for such childbirth purposes shall be charged against accumulated sick leave.

g) **Paternity Leave:** Male employees may be granted paternity leave for absence from work due to his wife's confinement for childbirth. Such paternity leave shall not exceed (2) workdays encompassing the date of the childbirth.

h) **Court Leave:** The Employee, when called upon to serve as jurors, may, at his/her option, be granted Court Leave for such period as the jury may be impaneled. If the Employee is called to jury duty, then he/she shall present his/her Juror Summons to his/her immediate supervisor together with a complete Request for Leave for the Commissioner's signature and processing. Employees who serve as jurors using Court Leave to cover the period of absence shall turn over to the Accounting Division such jury fees (as distinct from expense allowance) as they receive them from court, except in instances where Employee serves as a juror in a federal court in which case Employee may elect to retain any fees, including jury fees, paid by the federal court. Expense allowances paid the Employee for whatever purpose may be retained by the Employee to defray the expenses for which they were granted. An employee subpoenaed as a witness, except as government witness, shall charge such absence to annual leave or leave without pay. Court Leave shall be granted to a employee subpoenaed in litigation in which the government has no interest, to serve as a witness in the Employee's present or past official capacity as a governmer employee and who may be required to present government records in testimon Such employee must inform the Commissioner of the required testimony as soon possible after being subpoenaed.

i) Military Leave: Military Leave of absence under orders with pay, not to exceed fifteen (15) working days in any calendar year, regardless of the number of training periods in the year, shall be granted by the Commissioner to the Employee if he/she is a member of the United States National Guard and Reserve components of the U.S. Armed Forces. When directed under orders issued by proper military authority, military leave will not be granted in order to extend leave time for any additional training days. If the Employee applies for military leave, he/she must provide a copy of his/her military orders.

j) Compassionate Leave: The Commissioner may grant Employee compassionate leave with pay of no more than five (5) working days in cases of death in the immediate family of the Employee. Immediate family of the Employee shall be defined as an Employee's mother, father, brother, sister, spouse, immediate offspring (natural and culturally or legally adopted), grandfather, grandmother, grandchild, mother-in-law, father-in-law. Compassionate leave must be taken within eighteen (18) days after the death of the immediate family member.

k) Election Day Leave: The Commissioner may grant the Employee two (2) hours of leave with pay to vote on any official election day that falls on a working day. The determination of which two hours of the day shall be taken will be made by the Employee's supervisor, so as to assure adequate staffing of the MPLA office at all times.

l) Holidays: The Employee shall be released from work on all legal holidays, except during emergencies, without loss of pay or charge to leave account.

5. JOB DESCRIPTION:

This contract (unless it is for renewal) must have attached a detailed Job Description of the Employee, a complete employment application and other pertinent documents, such as college transcript.

6. OUTSIDE EMPLOYMENT:

Upon prior written approval by Employer, outside work is permitted to the extent that i does not prevent an employee from devoting his/her primary interests, talents an energies to the accomplishment of work for the Employer or tend to create a conflic between the private interests of an employee and official responsibilities.   Th Employee's outside employment shall not reflect discredit on the Employer.

7. INSURANCE:

a) Worker's Compensation: In the event of on-the-job work related injury or illne the Employee will be entitled to benefits under the Worker's Compensati

Insurance contract in force for the Northern Mariana Islands Government. The Employee is responsible for reporting any on-the-job work-related injury or illness to the Employee's supervisor as soon as possible.

b) Group Insurance: Group health and group life insurance coverage are available for those who wish to apply. The Employer will pay part of the cost of the insurance in accordance with the current agreement between MPLA and the insurance carriers at the time Employee elects to join.

c) The Employer provides no insurance other than worker's compensation, group health and group life. Professional responsibility insurance may be provided to certain professional employees at the discretion of the Employer.

8. ADDITIONAL TERMS AND CONDITIONS:

Upon written, mutual agreement of the Employer and Employee, this contract may be amended by modifying existing provisions or adding new ones.

9. RENEWAL OF CONTRACT:

a) This contract is automatically renewable, unless otherwise stated in writing.

b) The Employer shall give sixty (60) days advance notice of non-renewal of employment before completion of this contract. Notice of renewal of contract shall be made through Personnel Actions. Such notice shall be deemed a termination of the contract without cause, and the applicable provisions shall apply.

c) If the Employer decides not to offer a new period of employment and not to execute a new employment contract, that decision cannot be appealed, regardless of the reason, if any.

10. EARLY TERMINATION AND RESIGNATION:

a) The Employer may terminate the Employee without cause upon sixty (60) days advance written notice of termination of employment. In such event, Employer shall pay the Employee a lump sum for the remaining duration of the contract or twelve months, whichever period is longer.

b) The Employer may terminate this agreement at any time for cause upon thirty (30) days written notice and the Employee prior to the effective date of such termination should any of the following occur:

1) The Employee's commission of a felony, fraud, or embezzlement, or

2) The Employee's material breach of his obligations as set forth in this agreement if the breach is not corrected within forty-five (45) days of the Employee's reviewing written notice of the alleged breach, or

3) the Employee's becoming so disabled as to be unable to substantially perform Employee's duties on a full-time basis for a period of three (3) months or more, and remains unable to substantially perform his duties at the expiration of this period.

Such termination for cause shall be effective only after written notice setting out the cause for termination and after the Employee is provided forty-five (45) days opportunity from receipt of the notice to cure such cause for termination of employment. The Employer shall pay the Employee the compensation provided in this contract plus all benefits through the effective date of such termination.

The Employee shall be entitled, if timely protested, to agency administrative review under the CNMI Administrative Procedures Act. If the Employee opts to appeal the termination of his/her employment, then Employer agrees to pay Employee regular salary and benefits until such time that the Employee has exhausted his/her administrative appeals up to the Hearing Officer level only; however the payment of such salary and benefits shall in no way extend beyond sixty (60) days after the date of termination.

If in any case the notice of termination for cause is determined not to be justified or proper for any reason, the Employee shall be entitled to reinstatement and/or termination under the provisions of Section 10(a) above.

c) When resigning, the Employee must give the Employer written notice sixty (60) days in advance of termination of employment. The Employer and Employee may agree to a shorter notice in advance of termination of employment. In the event of a resignation, and regardless of what matters precipitated the resignation, the Employee shall be entitled to a lump sum of three months' severance pay, beginning from the effective date of the resignation, including, but not limited to, life insurance, short and long term disability insurance, medical insurance and retirement contributions.

11. NO HOUSING ALLOWANCE

Employee is not entitled to receive any housing allowance.

12. LAW GOVERNING

This contract shall be governed by and subject to the laws of the Commonwealth, both as to performance and interpretation therein. If any provision of this contract shall be held invalid under the laws of the Commonwealth of the Northern Mariana Islands for any reason, the same shall in no way impair the validity of this contract and this contract shall otherwise remain in full force and effect.

WHEREFORE, the parties enter into this Contract for employment.

I. **MARIANAS PUBLIC LANDS AUTHORITY**

I hereby certify that the hiring of the Employee named herein is within the MPLA's FTE requirement:

Date: 5/5/03                              _____
                                          Peggy B. Salas, Chief of Human Resources

Date: 5/5/00                              _____
                                          Frank M. Eliptico, Deputy Commissioner

II. **FUND CERTIFICATION**

I hereby certify that there are sufficient funds available for the execution of this contract:

Date: 5/5/03                              _____
                                          Cristina R. Lazaro, Comptroller

II. **LEGAL COUNSEL**

I hereby certify that this contract has been reviewed and approved as to form and legal capacity.

Date: 05-5-03                             _____
                                          Legal Counsel, MPLA

III. **SIGNATURE OF PARTIES**

Date: 5-5-03                              _____
                                          Ana Demapan-Castro, Chairperson

Date: 5/5/2003                            _____
                                          Employee

Page 8 of 8

# JOB DESCRIPTION

NAME:        HOFSCHNEIDER, HENRY S.
POSITION:    COMMISSIONER
PAYLEVEL:    N/A

## DUTIES & RESPONSIBILITIES:

1. Implements, administers, and enforces policies and procedures developed and adopted by the Marianas Public Lands Authority Board of Directors (the "Board").
2. Keeps the Board informed by collecting, analyzing and summarizing information and trends; remaining accessible; answering questions and requests.
3. Responsible for the organization and administration of MPLA and for the coordination of its divisions.
4. Channels requests of the Board to the appropriate MPLA division for timely and sufficient responses and actions.
5. Provides direction and leadership in the development and implementation of Board policies.
6. Develops short-term and long-term goals and objectives and benchmarks and manages efforts involved in meeting such goals.
7. Manages, appoints, and terminates staffs consistent with applicable Human Resource rules and regulations.
8. Achieves financial objectives by developing and recommending an annual budget; scheduling expenditures; analyzing variances; initiating corrective actions; anticipating long-term issues; and approves expenditure of funds authorized by the Board.
9. Enters into contracts, agreements, and other such transactions as may be beneficial MPLA.
10. Complies with local laws and regulations by studying existing and new legislation; enforcing adherence to requirements; advising the Board on needed actions.
11. Represents MPLA to the community and ensures that the MPLA's objectives and other key messages are accurately conveyed to the public.
12. Maintains professional and technical knowledge by attending educational workshops; reviewing professional publications; establishing personal network

THIS POSITION IS:   (check one)

_____     FLSA COVERED (eligible for overtime and compensatory time)
  XX         FLSA EXEMPT (not eligible for overtime or compensatory time)

DISCLAIMER:  Nothing in this job description restricts management's right to assign reassign duties and responsibilities to this job at any time. Employee and Supervisor have and understand this Job Description.

_[signed] 5/5/2003_
Employee Signature/Date

_[signed] Acting Chairman_
Supervisor Signature/Date

# Exhibit "B"

**Marianas Public Lands Authority**
P.O. Box 500380
Saipan, MP, 96950
Tel Nos.: 234-3751/52/57/59  Fax No.: 234-3755
E-mail address: opl@vzpacifica.net

# MEMORANDUM

Date:      July 28, 2004                                          BD 04-0959

To:        Commissioner

CC:        Board Members, Acting Deputy Commissioner

From:      Chairperson

Subject:   Notice of Continuing Suspension

---

On July 19, 2004, I wrote a letter to the Attorney General and the Secretary of Finance requesting that they review and provide an opinion concerning Land Compensation Drawdown Request FY 04-03. To date MPLA has not received a written response to this inquiry. Until an official opinion is received from both agencies, your suspension must continue.

You are hereby notified that effective the start of business on July 30, 2004, your employment suspension will continue, but without pay. Your suspension shall continue for the same reasons as stated in the July 8, 2004 suspension Memorandum until such time as a formal opinion is received from the Attorney General and the Secretary of Finance. In the event that it is their opinion that there is a violation of the law, regulation or the indenture agreement, you will be subject to further disciplinary action. If there is no findings of any violation, then you may be paid retroactively.

You have the right to administratively appeal this Notice of Continuing Suspension without pay pursuant to the Commonwealth Administrative Procedure Act.

ANA DEMAPAN-CASTRO
Chairperson

CONFIDENTIAL AND PRIVILEGED INTRA-AGENCY COMMUNICATION

This document and the information it contains are intended for the person(s) named above. If you have received this document in error, please call 670.234.3751, and then return the document in its entirety to the address above.

# Exhibit "C"

**Marianas Public Lands Authority**
P.O. Box 500380
Saipan, MP, 96950
Tel Nos.: 234-3751/52/57/59   Fax No.: 234-3755
E-mail address: mpla@vzpacifica.net

# Memo

| | |
|---|---|
| **Date:** | September 04, 2004 |
| **To:** | Henry S. Hofschneider, MPLA Commissioner |
| **Cc:** | Ana Demapan-Castro, Board Member |
| | Benita A. Manglona, Board Member |
| **From:** | Nicolas M. Nekai, Board Member |
| | Manuel P. Villagomez, Board Member |
| | Felix A. Sasamoto, Board Member |
| **Subject:** | Order That Commissioner Hofschneider Return to Work Immediately |

---

The unfortunate situation surrounding the Chairwoman's decision to suspend you from work has gone on long enough. This letter is written in order to bring this matter to a conclusion. We sincerely hope that when presented with a copy of this letter, Chairwoman Demapan-Castro accepts our final decision on the matter and puts her efforts toward more worthwhile pursuits. The actions taken in this letter are not meant to undercut her authority; rather, they are taken in an attempt to stop the efforts being wasted about what appears to us as merely a case of miscommunication and instead allow the MPLA to put its efforts into what we are supposed to be doing, *i.e.*, serving the people of the Northern Marianas.

We are all fully aware that you did nothing wrong. Numerous lawyers and disinterested persons have looked into the matter and concluded the same. The Office of the Attorney General, the CDA, and the Bond Counsel all agree that CDA had no choice but to reduce the amount of money to be transferred. You were right to agree to the CDA's recommended reduction of the amount to be transferred. The alternative would have been for MPLA to receive no transfer at all. If this had happened, numerous land claim settlements would not have been concluded. Board member Nekai was correct in his July 1, 2004 decision to instruct the immediate processing of land claim payments, after he had concluded that the change was not a problem and a non-issue. Much evidence has been reviewed regarding the draw down and it all leads to the same conclusion, that there was no factual basis for the Chairwoman to suspend you. In addition, as you are well aware, the Chairwoman acted unilaterally and without lawful authority from the Board when she suspended you from work. The Board, not the Chairwoman nor any one Director, is the sole authority that possesses the power to take any action

concerning your employment. The Chairwoman's suspensions of you were without authority and are hereby rescinded in their entirety. Everything related to your purported suspensions will be removed from your personnel folder.

In order to make the matter even clearer we are each stating in this letter that the Chairwoman has absolutely no authority to act on our behalf in any matter related to your employment. Only the Board, acting as a whole during a properly noticed meeting, may make any kind of decision on your employment. As it is clear that the Board has not taken any such action against you, you are free to return to work immediately.

For the foregoing reasons, please return to work as the MPLA Commissioner, effective immediately. Upon your return to work, please present this letter to Chairwoman Demapan-Castro and to the MPLA Accounting Division. Chairwoman Demapan-Castro is requested to schedule a board meeting for next week and include an item on the agenda related to your suspensions so that we can all meet and put this matter behind us once and for all.

The Accounting Division is to immediately issue you a check covering all of the back pay due you from your date of suspension forward. They are also to take all necessary steps to ensure that all of your benefits remain in full force and were not compromised during the period of your suspension.

Each of us is sorry that we are placed in the uncomfortable position of having to overrule the Chairwoman. We waited for the two of you to work the problem out amongst yourselves but were disappointed with the results of that attempt. We sincerely hope that the Board and you can put this situation behind us and return to doing what we do best, serving the people of NMI descent.

_____  Dated: 09/17/04
NICOLAS M. NEKAI

_____  Dated: 09/17/04
MANUEL P. VILLAGOMEZ

_____  Dated: 9/17/04
FELIX A. SASAMOTO

# Exhibit "D"



Received
10/12/04

**Marianas Public Lands Authority**
P.O. Box 500380
Saipan, MP, 96950
Tel Nos.: 234-3751/52/57/59   Fax No.: 234-3755
E-mail address: opl@vzpacifica.net

# MEMORANDUM

| | | |
|---|---|---|
| **Date:** | October 8, 2004 | BD04-1001M |
| **To:** | Henry S. Hofschneider | |
| **From:** | MPLA Chairwoman | |
| **Subject:** | Notice of Termination | |

Pursuant to the powers vested in me by law and by delegation of authority by the Board of the Marianas Public Lands Authority (the "Board"), and after careful deliberation and contemplation of your actions taken while Commissioner at the Marianas Public Lands Authority (MPLA), and recognizing the subsequent serious adverse effects on MPLA, I regret to inform you that your employment with MPLA is hereby terminated, for cause, effective immediately.

The bases for your employment termination are enumerated, but is not limited to, the following:

1. VIOLATIONS OF P.L. 13-17, AS AMENDED, THE BOND INDENTURE AGREEMENT, BOARD POLICIES AND PROCEDURES; BREACH OF FIDUCIARY DUTY AND CARE; BREACH OF TRUST; BREACH OF LOYALTY; INSUBORDINATION; LACK OF LEADERSHIP; DISRESPECT FOR OTHERS. You altered Land Compensation Requisition FY04-03 without obtaining the MPLA Board's approval and the Secretary of Finance's concurrence as required by P.L. 13-17, as amended. You had full knowledge and were aware that MPLA Board approval and concurrence by the Secretary of Finance is necessary for a change in the draw-down request amounts.

    You, however, intentionally authorized the alteration of the draw-down request in Requisition FY 04-03 contrary to CNMI Public Laws and the Bond Indenture Agreement. Your unauthorized action adversely affected and continues to negatively affect MPLA's operations of business and irreparably affected the draw-down procedures established by law and the Bond Indenture Agreement.

    It is the findings of the Board and MPLA that the land compensation draw-down procedures established by P.L. 13-17, as amended, the Bond Indenture Agreement, and the Board have been changed by the Bond Trustee, the Bank of Guam. This change in procedure is a direct result of your unauthorized alteration of Requisition FY 04-03.

    Although your employment contract provides for a cure period to correct the violations of laws, the Bond Indenture Agreement, and Board policies and procedures, and the resultant adverse impacts, I have determined through careful investigation, review of legal counsel opinions, and Bank of Guam's emphatic adherence to the new draw-down procedures, that your actions are material breaches causing irreparable damages that are incurable.

2. **INSUBORDINATION; BREACH OF DUTY AND CARE; BREACH OF TRUST; BREACH OF LOYALTY; LACK OF LEADERSHIP; DISRESPECT FOR OTHERS.** On July 15, 2004, you were ordered to return your personnel file, but you did not return the subject file within forty-five (45) days from the date of request. Such refusal is a clear and willful violation of my direct, clear, and lawful order.

3. **TRESPASS; INSUBORDINATION; BREACH OF DUTY AND CARE; BREACH OF TRUST, BREACH OF LOYALTY; LACK OF LEADERSHIP; DISRESPECT FOR OTHERS.** On July 15, 2004, you were ordered not to enter the premises of MPLA or use any of its resources without proper authority. Despite this order not to enter the premises of MPLA, you continued to trespass onto MPLA premises.

   Your total disregard for my clear, direct, and lawful warnings, orders, and instructions not to trespass on MPLA premises has caused disruption of MPLA business and instilled fear in the employees of MPLA. Your repeated trespass on MPLA premises has disrupted the conduct of its business, and thus, you must not be allowed to re-enter the MPLA premises because you will further disrupt MPLA's business and employees.

4. **INSUBORDINATION; BREACH OF DUTY AND CARE; BREACH OF TRUST; BREACH OF LOYALTY; LACK OF LEADERSHIP; DISRESPECT FOR OTHERS.** On July 2, 2004, you abruptly walked out of an MPLA meeting, without my permission, and you refused to return to the meeting. While issues were being discussed, you got up from your chair, slammed the door and left the room. I tried to speak to you, but you refused to listen.

5. **FAILURE TO FULFILL YOUR DUTIES AS COMMISSIONER, INCLUDING BUT NOT LIMITED TO, FAILURE TO RESPOND TO MPLA LESSEE'S REQUESTS TO THE DETRIMENT OF MPLA AND THE NORTHERN MARIANAS DESCENT; FAILURE TO PROMOTE A POSITIVE WORKING ATMOSPHERE AT MPLA AND/OR DISRESPECT FOR OTHER EMPLOYEES AND THE BOARD.**

Therefore, please immediately return any MPLA property in your possession, custody, or control. Finally, pursuant to the terms of your employment contract, you may appeal said termination and have every right to do so.

_____
ANA DEMAPAN-CASTRO
Chairwoman

Cc:   MPLA Board
      Vince Castro, Acting Commissioner
      Frank M. Eliptico, Deputy Commissioner
      David S. Demapan, Comptroller
      Edward M. Deleon Guerrero, Special Assistant to the Acting Commissioner